UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RHULAND DAVIS,

                              Plaintiff,

          – against –

METRO NORTH COMMUTER
RAILROAD, ANDREW PAUL, and
JOHN LONGOBARDI,

                              Defendants.

**OPINION & ORDER**

21 Civ. 387 (ER) (BCM)

RAMOS, D.J.:

        Rhuland Davis brought this action *pro se* against Metro-North Commuter

Railroad and Metro-North employees Andrew Paul and John Longobardi on January 11,

2021.  Doc. 1.  Davis filed a first amended complaint ("FAC") on September 29, 2021.

Doc. 22.  Davis alleges that he was subjected to racial discrimination, wrongful

termination, and retaliation in violation of federal and state laws and was deprived of

procedural due process in the pre-termination proceedings.  Doc. 22.  Defendants are

moving to dismiss the FAC, except for the Title VII claims against Metro-North

concerning Davis' termination of employment.  Doc. 23.  For the reasons set forth below,

the motion is GRANTED.

## I.      BACKGROUND

        The following facts are based on the allegations in the FAC, Doc. 22, which the

Court accepts as true for purposes of the instant motion.  *See, e.g.*, *Koch v. Christie's Int'l

PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Davis, who identifies as an African American

male, is a former Metro-North Conductor whose employment was terminated on October

9, 2018.  Doc. 22 ¶¶ 3, 7.  Davis was employed by Metro-North for twenty-seven years,

twenty-two of which he worked as a train conductor. *Id.* ¶ 9. Davis' employment with Metro-North is governed by a Collective Bargaining Agreement ("CBA") between Metro-North and his union, the Association of Commuter Rail Employees, Local 1 ("ACRE"). Doc. 25 at 10.

On June 20, 2016, Davis signed in at the Harmon train station in Croton-On-Hudson, New York for a conductor flag assignment. Doc. 22 ¶ 2. His duty was to ensure the safety of a construction crew working on tracks. *Id.* Davis alleges that his services were not needed at that time, so he notified the dispatcher, left the site, and worked another shift in the evening. *Id.* Metro-North denied that Davis was cleared from the assignment and charged him with conduct unbecoming of an employee, dishonesty, failure to complete the assignment, failure to perform safety briefing, failure to perform assigned duties, and submitting false payroll records. Doc. 25 at 10–11; Doc. 24-2 at 2. After an investigation and hearing, Davis was found guilty of the charges and terminated. Doc. 22 ¶ 2. With ACRE's assistance, Davis appealed the decision. *Id.* As a result of the appeal, his termination was reduced to a sixty-one-day suspension and a "last chance" warning pursuant to which any subsequent discipline would result in termination. *Id.*; Doc. 25 at 11.

On May 1, 2017, Davis filed a discrimination complaint with the New York State Division of Human Rights (the "NYSDHR") alleging that Metro-North engaged in racial discrimination against him when it suspended him in connection with the events of June 20, 2016. Doc. 22 ¶ 5. After investigation, the NYSDHR issued a decision on October 30, 2017, finding that there was no probable cause for Davis' discrimination claims. Doc. 24-3 at 2.

On July 12, 2018, two trains collided on the New Haven line.  Doc 22 ¶ 17.

Davis, an engineer, and a brakeman were in the engine cabin of one of the trains.  *Id.* ¶

14*.*  Davis alleges that because he occupied the "fireman's" side of the cabin, he was

unable to see the approaching train and was unable to give a timely signal to apply the

brakes to the engineer.  *Id.* ¶¶ 15, 17.  After the collision, Davis was required to report the

incident.  Doc. 24-4 at 2.  Davis did not contact the Rail Traffic Control ("RTC") because

he heard another crewmember already doing so.  Doc. 22 ¶ 18.  As a result of the

collision, the two trains became "hitched," meaning that the "knuckles" of the two trains

became connected.  *Id.* ¶¶ 17, 19.  Davis "unhitched" the trains by going down to the

track and physically detaching the knuckles without authorization.  *Id.* ¶ 19.

Davis was suspended immediately after the collision.  *Id.* ¶ 20.  Approximately a

week later, he received a notice of a disciplinary hearing regarding the collision.  *Id.*

Davis was charged with failing to prevent the engineer from operating at an excessive

speed, failing to report the collision, participating in an unauthorized reverse move of the

train, and failing to carry his conductor certificate.  Doc 24-4 at 2.  The notice also

contained information about a pre-trial meeting scheduled for Wednesday, July 25, 2018.

*Id.*  Prior to the commencement of the disciplinary hearing, Davis rejected Metro-North's

offer to resolve the matter.  Doc. 31-6.  Davis declined to sign an admission of guilt and

waive his right to appeal in exchange for an option to continue his employment with

Metro-North.  *Id.*

At the hearing held on September 5 and 19, 2018, Davis testified that (1) he could

not see the approaching train and therefore could not notify the engineer; (2) the other

crewmember initiated the emergency protocol by calling the RTC; (3) his conductor

certificate fell out of his pocket earlier that day; and (4) unhitching trains does not constitute a reverse move requiring authorization.  Doc. 22 ¶ 21.  Davis also claimed that the engineer took full responsibility for the incident.  *Id.* ¶ 23.

Davis alleges that prior to the conclusion of the investigation, Andrew Paul, Vice President of Labor Relations, communicated to the union that he intended to fire Davis. *Id.* ¶ 24.  Davis also claims that John Longobardi, Deputy Chief of Field Operations, told a union representative that he was forced to sign Davis' dismissal letter.  *Id.*  At the conclusion of the hearing, Davis was terminated on October 9, 2018.  *Id.* ¶ 3.

On October 8, 2019, Davis filed a complaint against Metro-North with the NYSDHR and the Equal Employment Opportunity Commission ("EEOC") alleging that Metro-North engaged in unlawful racial discrimination and retaliation motivated by his prior complaint about racial discrimination.  Doc. 24-5 at 2; Doc. 25 at 12.  The NYSDHR issued a decision on June 24, 2020, finding no probable cause for Davis' allegation.  Doc. 24-5 at 2.  The EEOC adopted the NYSDHR's no probable cause determination.  Doc. 25 at 13.

On November 18, 2019 and December 10, 2019, pursuant to the CBA, Davis and Metro-North participated in arbitration.  Docs. 24-6; 24-7.  The arbitrators upheld Metro-North's decisions regarding Davis's prior suspension and his termination.  *Id.*

Defendants moved to partially dismiss the FAC on October 21, 2021, Doc. 23, arguing that the New York State Human Rights Law ("NYSHRL"), Section 1981, Section

1983, and Title VII claims[1] regarding the events of June 20, 2016 should be dismissed for lack of subject matter jurisdiction, claim preclusion, and failure to state a claim.  Doc. 25.

After this motion was fully briefed, Davis retained counsel.  Doc. 41.  Counsel for Davis subsequently indicated to the Court that Davis wished to withdraw Davis' claims under the NYSHRL as well as his claims under Title VII against the individual defendants only.  Doc. 48.  The Court held a conference on June 8, 2022 at which counsel for Davis again confirmed his intention to withdraw those claims.  Davis continues to oppose dismissal of the remaining claims.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  *See Mason Tenders Dist. Council of Greater New York and Long Is. v. CAC of New York, Inc.*, 46 F. Supp. 3d 432, 435 (S.D.N.Y. 2014).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the Court to resolve the disputed jurisdictional fact issues.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d

---

[1] Defendants do not move to dismiss the Title VII claim against Metro-North concerning Davis' termination in connection with the collision that occurred on July 12, 2018.

Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff.  *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  "Despite the lenient standards with which courts review *pro se* complaints, *pro se* plaintiffs must establish subject matter jurisdiction." *Hill v. Douglas*, No. 09 Civ. 4259 (JS) (ARL), 2010 WL 395817, at *2 (E.D.N.Y. Jan. 15, 2010) (citation omitted).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the Court must consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Chambers v. Wright*, No. 05 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

### B.  Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  *Id.* (citing *Twombly*, 550 U.S. at 570).  Pleadings that tender "naked assertions devoid of further factual enhancement," *id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted), or "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 555).  In addition to requiring sufficient factual matter to state a plausible claim for relief, Rule 8 requires a "short and plain statement" of a plaintiff's claim in order to "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988) (citation omitted).  It is within the Court's discretion to dismiss a complaint "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Shomo v. New York*, 374 F. App'x 180, 182 (2d Cir. 2010) (quoting *Salahuddin*, 861 F.2d at 42).

### C.  Pro Se Plaintiff

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers," *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)), and liberally construes their pleadings "to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citation omitted).  The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue."  *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  Nonetheless, *pro se*

status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *see also Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011) (*pro se* plaintiffs must plead sufficient facts to establish a plausible claim to relief and establish subject matter jurisdiction).

## III.  DISCUSSION

### A.  NYSHRL Claims

Davis brings claims under the NYSHRL alleging racial discrimination and retaliation by Defendants.  Doc. 22 ¶ 1.  Davis' racial discrimination claims stem from the 2016 incident when he left the assigned worksite early and collected payment for the shift.  *Id.* ¶¶ 2, 5.  Davis claims that Metro-North subjected him to more severe disciplinary measures because of his race when it suspended him for sixty-one days and placed him on the "last chance" warning.  *Id.*  The core of Davis' retaliation claim is his 2018 termination.  *Id.* ¶¶ 3, 5.  Davis was terminated in connection with the two-train collision.  *Id.* ¶ 3.  Davis alleges Metro-North terminated his employment in retaliation for his 2017 discrimination complaint with the NYSDHR.  *Id.* ¶ 5.  Defendants move to dismiss those claims under Fed. R. Civ. P. 12(b)(1) as barred by the election of remedies doctrine.

Counsel for Davis has indicated that Davis now wishes to voluntarily dismiss the NYSHRL claims.  Doc. 48.  Accordingly, the NYSHRL claims are dismissed.

**B.  Section 1983 and 1981 Claims**

Davis brings claims under Sections 1981 and 1983 alleging racial discrimination and retaliation.  Doc. 22 ¶ 1.  Davis' racial discrimination claim stems from the 2016 incident when he left the worksite early and collected payment for that shift.  *Id.* ¶ 2.  As a disciplinary measure, Metro-North suspended Davis for sixty-one days as a condition of the "last chance" policy.  *Id.*  On May 1, 2017, Davis filed a complaint with the NYSDHR claiming that Metro-North suspended him because of his race.  Doc 24-3 at 2.  On October 30, 2017, the NYSDHR dismissed Davis' complaint based on a finding of no probable cause to believe that Metro-North engaged in discriminatory conduct regarding the 2016 incident.  *Id.*  Davis' claim regarding retaliation is based on the termination of his employment in 2018 after the train collision.  Doc. 22 ¶ 3.  On October 8, 2019, Davis filed a complaint with the NYSDHR, alleging that Metro-North terminated his employment in retaliation for his May 2017 complaint.  Doc. 24-5 at 2.  On June 24, 2020, the NYSDHR issued a no probable cause determination, finding that there was no discriminatory animus on the part of Metro-North and that it had legitimate non-discriminatory bases for Davis' termination.  *Id.* at 2, 5.  On October 13, 2020, the EEOC adopted the NYSDHR's finding of no probable cause and issued the right-to-sue letter regarding the retaliation claim.  Doc. 22 at 10; Doc. 24-3 at 2.

Davis alleges that Defendants violated Sections 1983 and 1981 by subjecting him to more severe disciplinary measures and terminating his employment in retaliation for his discrimination complaint with the NYSDHR.  Doc. 22 ¶ 1.

Both Sections 1981 and 1983 safeguard plaintiff's rights against discrimination based on race.  *Littlejohn v. City of New York*, 795 F.3d 297, 314, 320 (2d Cir. 2015);

*Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004).  To state a claim

under Section 1983, a plaintiff must allege that (1) a right secured by the Constitution or

federal law was violated; and (2) the alleged violation was committed by a person acting

under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).

Section 1983 creates no substantive rights, but rather provides a procedure for enforcing

existing federal constitutional and statutory rights.  *See Sykes v. James*, 13 F.3d 515, 519

(2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

It is well-established that employment discrimination based on race and retaliation

for discrimination complaints constitute unlawful deprivation of rights, privileges, or

immunities under the Equal Protection Clause of the Fourteenth Amendment.  *See*

*Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004); *Vega v. Hempstead Union Free*

*Sch. Dist.*, 801 F.3d 72, 81 (2d Cir. 2015).  To establish individual liability under Section

1983, a plaintiff must show that defendants were exercising power "possessed by virtue

of state law and made possible only because the wrongdoer is clothed with the authority

of state law."  *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981).  A state employee

acting in their official capacity qualifies is generally a state actor acting under color of

state law.  *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir.

2004).

Unlike Section 1983, Section 1981 enumerates rights which are protected from

intentional race discrimination by both private and state actors.  *See generally Phillip v.*

*Univ. of Rochester*, 316 F.3d 291, 297 (2d Cir. 2003).  The statute specifically protects the

right of "all persons within the jurisdiction of the United States" to "make and enforce

contracts" without respect to race.  *Id.* at 474 (quoting 42 U.S.C. §1981(a)).  The statute

further defines "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(b). The statute thus covers employment discrimination and discriminatory termination of employment. *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000).

### 1. Preclusive Effect of NYSDHR Proceedings

Defendants argue that Davis' claims alleging racial discrimination and retaliation under Sections 1981 and 1983 should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as precluded by the determinations of the NYSDHR.

Because preclusion is an affirmative defense and not a jurisdictional matter, a court can dismiss a claim on preclusion grounds on a Rule 12(b)(6) motion. *See Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs.*, 652 F. Supp. 2d 463, 470 (S.D.N.Y. 2009). Under the doctrine of *res judicata*, also known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *EDP Med. Comput. Sys. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (citation omitted). When a federal court determines a state court judgment should be given preclusive effect, the federal court must give the judgment "the same preclusive effect . . . as the judgment would have had in state court." *Burka v. N.Y. City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994). Accordingly, because Davis filed complaints with the NYSDHR and received determinations of no probable cause, the Court must look to how New York courts analyze a preclusive effect of an administrative agency's determination. *See Vargas v. City of New York*, No. 01 Civ. 7093 (LAP), 2008 WL 361090, at *5 (S.D.N.Y. Feb. 7,

2008) (applying New York *res judicata* principles to federal claims of employment discrimination).

New York courts have adopted a transactional approach to *res judicata* analysis. *O'Brien v. City of Syracuse*, 429 N.E.2d 1158 (N.Y. 1981).  Under this approach, parties and their privies are barred from relitigating matters "that could have or should have been raised in a prior proceeding arising from the same 'factual grouping,' 'transaction,' or 'series of transactions.'"  *Sackets Harbor Leasing Co., LLC v. Vill. of Sackets Harbor*, 485 F. App'x 497, 499 (2d Cir. 2012) (summary order) (citation omitted).  Furthermore, New York courts give "a conclusive effect to the quasi-judicial determinations of administrative agencies . . . when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law."  *Ryan v. New York Tel. Co.*, 467 N.E.2d 487 (N.Y. 1984) (citation omitted).  It is well established that the NYSDHR has the authority to adjudicate employment discrimination disputes and to issue binding determinations regarding those disputes.  *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 734 (2d Cir. 2001).

Federal courts have afforded a preclusive effect to the NYSDHR's no probable cause determinations when federal and state claims arise from the same facts, the claims involve the same parties or parties in privity, and the parties have an "adequate opportunity to litigate" those claims.  *See, e.g.*, *Kirkland v. City of Peekskill*, 828 F.2d 104, 110 (2d Cir. 1987) (dismissing plaintiff's federal claims alleging employment discrimination as precluded by the NYSDHR's determination); *Vargas*, 2008 WL 361090, at *5 (holding that relitigating of employment discrimination claims is precluded by the

NYSDHR's unreviewed determination of no probable cause).  Pursuant to the New York transactional approach, the relitigating of claims is precluded when the claims arise from the same factual grouping, transaction, or series of transactions even when a plaintiff brings them under a different legal theory of recovery or is seeking a different remedy. *Kirkland*, 828 F.2d at 110; *O'Brien*, 429 N.E.2d 1158.  Furthermore, for the purpose of *res judicata*, the employee-employer relationship is sufficient to establish privity.  *See Amadsau v. Bronx Lebanon Hosp. Center*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005) (concluding that the hospital and university were in privity with their employees for claim preclusion analysis).  Finally, an adequate opportunity to litigate the claim means that the claimant had an opportunity to present his charges on the record, though informally, and to submit all exhibits which he wished to present.  *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483 (1982).

There is no requirement of a hearing prior to or after the NYSDHR's determination of no probable cause.  *Id.* at 483–84.  Moreover, the NYSDHR's investigation of a complaint is similar to the federal procedure for a summary judgment motion or for a dismissal for failure to state a claim.  *Kirkland*, 828 F.2d at 108. Therefore, for the purpose of *res judicata*, the agency's procedure for determining the merits of a complaint is adequate even without a formal hearing.  *See Rosu v. City of New York*, 742 F.3d 523, 527 (2d Cir. 2014) (holding that New York City Commission on Human Rights' procedures of no probable cause determination based solely on the agency's investigation of the complaint were sufficient under the Due Process Clause).

In his response, Davis argues that his Section 1983 and 1981 claims are not precluded because the NYSDHR did not afford him a full and fair opportunity to litigate

the claims.  Doc. 31-2.  Davis erroneously relies on the standard for collateral estoppel or issue preclusion from *Kosakow v. New Rochelle Radiology Assocs*., P.C., 274 F.3d 706 (2d Cir. 2001) (adopting the New York standard of collateral estoppel under which there must be an identity of issues decided in the prior proceedings and where a claimant had a full and fair opportunity to litigate the issues).  Collateral estoppel is a "narrower species" of *res judicata* and precludes relitigating of an issue raised in the prior proceedings and decided whether or not the tribunals or causes of action are the same.  *Ryan*, 467 N.E.2d 487.  In this case, there is no need to analyze whether collateral estoppel applies since Davis' Section 1981 and 1983 claims are precluded by the principals of *res judicata*.

Davis' claims stem from the same 2016 and 2018 incidents as the claims he brought before the NYSDHR.  The parties here are the same because Paul and Longobardi, as employees of Metro-North, are in privity with Metro-North.  *See Reininger v. New York City Transit Auth.*, No. 11 Civ. 7245 (DAB), 2016 WL 10566629, at *4 (S.D.N.Y. Dec. 22, 2016) (concluding that a plaintiff's supervisor at the New York City Transit Authority ("NYCTA") was in privity with NYCTA for the purpose of *res judicata*).  Furthermore, Davis had an adequate opportunity to litigate his claims, because the NYSDHR investigated his complaints, Metro-North's response, and his rebuttal prior to issuing a no probable cause determination.  See *Vargas*, 2008 WL 361090, at *5 (concluding that NYSDHR's procedures did not offend due process and afford an adequate opportunity to litigate).  Therefore, Davis' claims under Sections 1981 and 1983 are precluded by the NYSDHR's determinations.

Defendants' motion to dismiss Section 1981 and 1983 racial employment discrimination and retaliation claims is granted.

### 2. *Section 1983 Equal Protection Claim*

Davis alleges a violation of the Fourteen Amendment based on Defendants' more severe enforcement of disciplinary policies against him than against other employees. Defendants seek to dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(6) because (1) the "class of one" doctrine does not apply in the context of public employment and (2) pursuant to the selective enforcement doctrine, Davis failed to provide sufficient comparators to plausibly allege he received disparate treatment due to Defendants' "malicious intent to injure" him. Doc. 34 at 8–10.

Plaintiffs alleging differential treatment not based on a membership in a protected class can bring a claim under the "class of one" and selective enforcement doctrines. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499–500 (2d Cir. 2001).

### (a) Class of One Claims

A valid claim under the "class of one" doctrine must contend that a plaintiff was irrationally treated differently from others similarly situated. *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019). It is well established that "class of one" claims cannot be asserted in the context of public employment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 594 (2008); *Porr v. Daman*, 299 F. App'x 84, 87 (2d Cir. 2008). Thus, as a public employee at Metro-North, Davis is barred from bringing Section 1983 equal protection claims under the "class of one" doctrine. *See Bertram v. Metro. Transp. Auth.*, No. 13 Civ. 338 (RA), 2014 WL 748933, at *9 (S.D.N.Y. Feb. 26, 2014) (dismissing MTA police officer's Section 1983 claims brough under the "class of one" doctrine against the MTA). Therefore, the Section 1983 claims brought under the "class of one" theory are dismissed.

### (b) Selective Enforcement Claims

To state a viable claim under the selective enforcement theory, a plaintiff must show that (1) a plaintiff was treated differently from other similarly situated employees and (2) such treatment was motivated by the malicious or bad-faith intent to injure a person. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007). The test of a malice-based claim requires proof that the disparate treatment was caused by the impermissible motivation. *Bizzaro v. Miranda*, 394 F.3d. 82, 87 (2d Cir. 2005). To prove disparate treatment, a plaintiff must show that he and his comparators are similarly situated in all material respects. *Artec Constr. & Dev. Corp. v. City of New York*, No. 15 Civ. 9494 (KPF), 2017 WL 5891817, at *10 (S.D.N.Y. Nov. 28, 2017). Similarly situated does not mean identical but rather "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). The resemblance test relies on an objective standard. *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y 2011). The test is satisfied when a plaintiff provides comparators a prudent person would objectively find to be roughly equivalent with the plaintiff. *Id.* "'[R]elevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." *Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004) (quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989)). Even though, at the pleading stage, a plaintiff is not required to proffer evidence of comparators, nonetheless, the plaintiff must allege sufficient facts to allow the court to determine whether it is plausible that a jury could determine that the alleged comparators are similarly situated and were treated

differently. *Rosario v. Town of Mount Kisco*, No. 16 Civ. 8766 (NSR), 2018 WL 2209487, at *7 (S.D.N.Y. May 11, 2018).

Here, Davis did not identify any comparators for the 2016 incident involving his unauthorized early leave of the worksite. As to the 2018 incident leading to Davis' termination, in the FAC, Davis describes some of the alleged comparators only in conclusory terms, and thus, fails to plausibly identify them. *See Bishop v. Best Buy, Co.*, No. 08 Civ. 8427 (LBS), 2010 WL 4159566, at *11–12 (S.D.N.Y. Oct. 13, 2010) (finding the plaintiff failed to identify similarly situated individuals when the plaintiff provided only conclusory statements about the alleged comparators).

To determine whether the comparator's conduct is comparable to that of a plaintiff, the courts look at (1) whether the plaintiff and the alleged comparators were subject to the same workplace policy; and (2) whether the conduct at issue was of comparable seriousness. *Graham*, 230 F.3d at 40. The other Metro-North employees Davis identifies were subject to different disciplinary policies due to admissions of guilt or engaged in conduct dissimilar to that of Davis. Davis alleges that the engineer and brakeman who were also involved in the 2018 train collision, unlike him, were not terminated. Doc. 22 ¶ 23. However, the engineer admitted guilt prior to the commencement of disciplinary hearings while Davis did not. *Id.*; *see Testagrose v. N.Y.C. Hous. Auth.*, 369 F. App'x 231, 232 (2d Cir. 2010) (summary order) (finding that individuals who voluntarily resigned or admitted guilt, unlike the plaintiff, were not similarly situated in all material respects). Davis also fails to clarify whether an engineer, who was involved in a different train collision, continued her employment with Metro-North because of voluntary admission of guilt.

Furthermore, Davis describes incidents where the individuals engaged in conduct ranging in seriousness from cheating on a test to use of illegal substances; however, none of the instances are of comparable seriousness to Davis' violations.  *Cf. Berube v. Great Atl. & Pac. Tea Co.*, 348 F. App'x 684, 687 (2d Cir. 2009) (finding that small invoice discrepancies and larger inventory discrepancies in the context of recordkeeping were of "comparable seriousness").  Because none of the identified individuals could objectively be considered similarly situated in all material respects, Davis fails to plausibly state that he was subjected to selective enforcement of Metro-North disciplinary and termination policies.  Therefore, the claim is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### C.  Title VII Employment Discrimination Claims

Davis alleges that Defendants violated Title VII when they discriminated and retaliated against him.  Defendants move to dismiss the Title VII claims against individual defendants as barred by the statute.  Doc. 25 at 23.  As to the claims regarding the 2016 incident, Defendants move to dismiss the Title VII claims for failure to exhaust administrative remedies.  *Id.* at 24.  At this juncture, Defendants are not moving to dismiss the Title VII claims of racial discrimination and retaliation against Metro-North regarding Davis' 2018 termination.  Doc. 23.

#### 1.  *Title VII Claims against Individual Defendants*

Counsel for Davis has indicated that Davis now wishes to voluntarily withdraw his Title VII claims against individual defendants.  Doc. 48 at 1.  Accordingly, these claims are dismissed.

2.   *Exhaustion of Title VII Administrative Remedies*

Defendants move to dismiss the Title VII claims against Metro-North regarding

Davis' 2016 suspension on the grounds that Davis failed to provide a right-to-sue letter

from the EEOC.  Doc. 25 at 24-25.  Davis has not presented arguments opposing this

issue.

Before filing a Title VII claim in a federal court, a plaintiff must exhaust

administrative remedies.  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir.

2015).  To exhaust administrative remedies, a plaintiff must timely file a complaint with

the EEOC and receive a right-to-sue letter.  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.

2003).  Failure to obtain a right-to-sue letter, like a statute of limitations, must be asserted

by a defendant, otherwise it is waived.  *Bey v. Welsbach Elec. Corp.*, No. 01 Civ. 2667

(LAP), 2001 WL 863419, at *3 (S.D.N.Y. July 30, 2001), *aff'd*, 38 F. App'x 690 (2d Cir.

2002).  Where a plaintiff fails to provide a right-to-sue letter from the EEOC and does not

allege that plaintiff received or attempted to procure such letter, courts have dismissed the

Title VII claims.  *See Staten v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*,

282 F. Supp. 3d 734, 742 (S.D.N.Y. 2017) (dismissing the Title VII claims where the

plaintiff did not receive a right-to-sue letter prior to filing the lawsuit), *aff'd*, 736 F.

App'x 17 (2d Cir. 2018); *Henriquez-Ford v. Council of Sch. Supervisors and

Administrators*, No. 14 Civ. 2496 (JPO), 2016 WL 93863, at *1 (S.D.N.Y. Jan. 7, 2016)

(dismissing the Title VII claims for failure to exhaust administrative remedies where the

plaintiff did not provide a right-to-sue letter and alleged that she filed a complaint with

the EEOC in conclusory fashion).

Here, Davis did not provide a right-to-sue letter from the EEOC regarding his 2016 suspension.  Nor does Davis allege that he had filed charges regarding the 2016 suspension with the EEOC.  Moreover, Davis has not provided arguments opposing Defendants' argument based on failure to exhaust administrative remedies.  Therefore, the Title VII claims against all defendants involving the 2016 incident are dismissed.

### D.  Section 1983 Procedural Due Process Claims

Davis alleges that his pre-termination proceedings were deficient and in violation of the Fourteenth Amendment.  Doc. 31-6.  Defendants move to dismiss the Due Process claim for failure to state a claim.  Doc. 34 at 11.

### 1.  Requirement of a Notice and Hearing

To state a claim alleging a deprivation of procedural due process, a plaintiff must (1) identify "a protected interest in property or liberty"; (2) establish that the state deprived the plaintiff of that right; and (3) show that the deprivation occurred without due process of law.  *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015).  A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent just cause for discharge.  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).  A public employee is entitled to a notice and a limited opportunity to be heard prior to termination.  *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985)).  The notice, either oral or written, must include the "charges against [the employee], an explanation of the employer's evidence, and an opportunity to present [the employee's] side of the story."  *Loudermill*, 470 U.S. at 546.  The requirement of a hearing is a minimal one, and it does not require a neutral decisionmaker.  *Locurto*, 264 F.3d at 173–

20

74.   Therefore, when a public employee has a protected interest in continued employment,

procedural due process is satisfied when an employer provides notice and a minimal

opportunity to present the employee's side of the story.   *Quire v. City of New York*, No. 19

Civ. 10504 (RA), 2021 WL 293819, at *4 (S.D.N.Y. Jan. 28, 2021).

Davis alleges that he did not receive an adequate notice and that the pre-

termination process was deficient in violation of the CBA.   Doc. 31-5.

Prior to Davis' termination, Metro-North sent Davis a written notice dated July

19, 2018, which contained the charges, their explanation, date and place of a formal

investigation hearing, and explanation of rights pursuant to the CBA.   Doc. 24-4 at 2.

The notice sufficiently satisfies the requirements stated in *Loudermill*.   Furthermore,

Davis' pre-termination hearing was held over two days, September 5 and 19, 2018, where

he testified.   Doc. 22 ¶ 21.   As to Davis' allegations that his termination was

predetermined prior to the hearings, Defendants correctly point out that the Fourteenth

Amendment does not require a neutral decisionmaker in pre-termination hearings.   *See*

*Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1077 (2d Cir. 2021)

(dismissing plaintiff's allegations premised on arbitrator's bias because due process does

not require a neutral decisionmaker in pre-termination proceedings); *Faghri v. Univ. of*

*Conn.*, 621 F.3d 92, 99 (2d Cir. 2010) (stating that a pre-termination hearing need not be

conducted before a neutral decisionmaker).

Because Davis received an adequate notice and an opportunity to present his

version of events, Defendants satisfied the Due Process requirements.   *See Leary v. Civ.*

*Serv. Emps. Ass'n*, No. 11 Civ. 716 (CS), 2012 WL 1622611 (S.D.N.Y. May 9, 2012)

(dismissing plaintiff's Due Process claims where the plaintiff received a notice and had a

pre-termination hearing), *aff'd sub nom. Leary v. Civ. Serv. Empls. Ass'n Region 3*, 516 F. App'x 42 (2d Cir. 2013).

Next, Davis alleges that Defendants deprived him of the right to a pre-trial meeting and settlement under the CBA in violation of Due Process.  Doc. 31-8.  The pertinent CBA provision requires that prior to the scheduled hearing, the Union and Metro-North representatives meet for the purpose of attempting to resolve the matter. Doc. 33-1 at 10.  The July 2018 letter to Davis regarding the disciplinary charges scheduled a pre-trial meeting for July 25, 2018, at 9:00 am.  Doc. 24-4 at 2.[2] Furthermore, Davis acknowledges that prior to the investigation he rejected Metro-North's proposal to settle premised on his admission of guilt and waiver of a right to appeal the disciplinary measures.  Doc. 31-6.  Accordingly, Davis' claims that he was deprived of the pre-hearing proceedings required by the CBA are dismissed for a failure to state a claim.

### E.  Leave to Amend

Pursuant to Fed. R. Civ. P. 15(a)(2), a "court should freely give leave [to amend a complaint] when justice so requires."  In particular, a *pro se* litigant "should be afforded every reasonable opportunity to demonstrate that [the *pro se* litigant] has a valid claim." *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (citation omitted).  However, leave to amend need not be granted if an amendment

---

[2] Davis refers to the letter stating his disciplinary charges in the FAC.  Doc. 22 ¶ 20. Therefore, the Court properly considers the document for the purpose of Defendants' Motion to Dismiss.  *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (allowing consideration of "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits").

would be futile. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997). An amendment is futile when a plaintiff cannot cure the defects by reframing the complaint. *See Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019).

Here, even though Davis has not requested to amend the FAC, the Court has the discretion to grant leave to amend the FAC *sua sponte*. *See Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008) (granting leave to amend the complaint *sua sponte*). The Court allows Davis to amend, but only his Section 1983 Equal Protection and Procedural Due Process claims.

The amendments to the rest of the claims would be futile because the "barriers to relief for [the] claims cannot be surmounted by reframing the complaint." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013). The repleading of Section 1983 and 1981 employment discrimination and retaliation claims will be futile because the claims are barred by *res judicata*. *See Rafter v. Liddle*, 704 F. Supp. 2d 370, 378 (S.D.N.Y. 2010) (denying leave to amend the complaint where the plaintiff had previously litigated the "essence of her complaint against [the] [d]efendants"). Further, Davis' Title VII claim regarding his 2016 suspension cannot be amended as he neglected to exhaust administrative remedies under the statute. *See Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (affirming the denial of leave to amend the complaint where the plaintiff failed to exhaust administrative remedies under ERISA).

If Davis elects to amend Section 1983 Equal Protection and Procedural Due Process claims, he must do so by July 19, 2022.

IV.    **CONCLUSION**

For the reasons set forth above, Defendants' partial motion to dismiss is

GRANTED.  Davis may amend Section 1983 Equal Protection and Due Process claims

by July 19, 2022.  Defendants are directed to answer the Second Amended Complaint by

August 9, 2022.  The Clerk of the Court is respectfully directed to terminate the motion,

Doc. 23.


It is SO ORDERED.


Dated:    June 21, 2022
          New York, New York

_____
        Edgardo Ramos, U.S.D.J.