UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RHULAND DAVIS,

                          Plaintiff,

        – against –

METRO NORTH COMMUTER
RAILROAD, ANDREW PAUL, and
JOHN LONGOBARDI,

                          Defendants.

**OPINION & ORDER**

21-cv-387 (ER)

RAMOS, D.J.:

        Rhuland Davis ("Davis") filed this action on January 11, 2021 against Metro-

North Commuter Railroad ("Metro-North") and Metro-North employees Andrew Paul

and John Longobardi ("Individual Defendants") (collectively "Defendants").  Doc. 1.

Davis filed a first amended complaint ("FAC") on September 29, 2021.  Doc. 22.  Davis,

an African America male, alleged that he was subject to racial discrimination, wrongful

termination and retaliation in violation of federal and state laws.  Doc. 22.

        The Court issued an opinion granting Defendants' motion to partially dismiss the

FAC on June 21, 2022 (the "June 2022 Opinion").  Doc. 52.  In the June 2022 Opinion,

the Court granted Davis limited leave to amend the complaint, and he timely filed a

second amended complaint ("SAC") on August 19, 2022.  Doc. 58.  In the SAC, Davis

alleges that he was subjected to race discrimination, in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII") and the Fourteenth Amendment of the United States Constitution.  Doc. 58 ¶¶ 60–68.[1]

Pending before the Court is Defendants' motion to dismiss the SAC for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. 64.  For the reasons set forth below, Defendants' motion is GRANTED.

## I.     BACKGROUND

### A. Factual Background

The following facts are based on the allegations in the SAC, Doc. 58, which the Court accepts as true for purposes of the instant motion, *see, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012), and from the Court's June 2022 Opinion, Doc. 52.  The Court adds additional relevant background.

Davis is a former Metro-North conductor whose employment was terminated on October 9, 2018.  Doc. 58 ¶¶ 2, 3, 8.  He was employed by Metro-North for twenty-seven years, twenty-two of which he worked as a train conductor.  *Id.* ¶ 2.  Davis' employment with Metro-North was governed by a Collective Bargaining Agreement ("CBA") between Metro-North and a union, the Association of Commuter Rail Employees, Local 1 ("ACRE"), of which he was a member.  *Id.* ¶ 11.

On June 20, 2016, Davis reported to the Harmon train station in Croton-On-Hudson, New York, for a conductor flag assignment.  Doc. 58 ¶ 2.  In that role, his job

---

[1] Under Title VII, Davis alleges that Metro-North discriminated against him because of his race. Doc. 58 ¶¶ 60–62.  He further alleges that Defendants violated the Fourteenth Amendment under the selective enforcement doctrine and otherwise deprived him of procedural due process in connection with his termination.  *Id.* ¶¶ 63–68.  Davis brought his Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983.

was to ensure the safety of a construction crew working on the tracks. *Id.* Davis alleges that his services were not needed at that time, so he notified the dispatcher, left the site, and worked another shift in the evening. *Id.* Metro-North denied clearing Davis from the assignment and charged him with conduct unbecoming of an employee, dishonesty, failure to complete an assignment, failure to perform a safety briefing, failure to perform assigned duties, and submitting false payroll records. *Id.* After an investigation and hearing, Davis was found guilty of the charges and terminated. *Id*. With ACRE's assistance, Davis appealed the decision. *Id.* As a result of the appeal, his termination was reduced to a sixty-one-day suspension, and he was issued a "last chance" warning pursuant to which any subsequent discipline would result in termination. *Id.*

On May 1, 2017, Davis filed a discrimination complaint with the New York State Division of Human Rights (the "NYSDHR") alleging that Metro-North engaged in racial discrimination when it suspended him in connection with the events of June 20, 2016. Doc. 58 ¶ 5; Doc. 65-3 at 2. After conducting an investigation, the NYSDHR issued a decision on October 30, 2017, finding that there was no probable cause for Davis' discrimination claims. *Id.*

Approximately a year later, on July 12, 2018, Davis was involved in another incident involving a collision between two trains on the New Haven line. Doc. 58 ¶¶ 3, 13. Davis, along with the engineer Craig Davis, and a brakeman, were in the engine cabin of one of the trains. *Id.* ¶¶ 13, 40. Davis alleges that because he occupied the "fireman's" side of the cabin, opposite the control side where the engineer sat, he was unable to see the approaching train and was unable to give a timely signal to apply the brakes. *Id.* ¶ 16. As a result of the collision, the two trains became "hitched." *Id.* ¶¶ 18,

20.[2]  Davis "unhitched" the trains by physically detaching the knuckles without authorization.  *Id*. ¶ 20; Doc. 65-5 at 2.  After the collision, Davis was required to report the incident to the Rail Traffic Control ("RTC").  Doc. 65-5 at 2.  However, Davis did not contact RTC because he allegedly heard another crewmember already doing so.  Doc. 58 ¶ 19.

Davis was suspended immediately after the collision.  Doc. 58 ¶ 21.  Approximately a week later, he received a notice of a disciplinary hearing regarding the collision, which was scheduled for July 26, 2018.  *Id.*; Doc. 65-5 at 2.  Davis was charged with failing to prevent the engineer from operating at an excessive speed, failing to report the collision, participating in an unauthorized reverse move of the train, and failing to carry his conductor certificate.  Doc. 65-5 at 2.  The notice also contained information about a pre-hearing meeting scheduled for the day before the disciplinary hearing, Wednesday, July 25, 2018.  *Id.*  A pre-hearing meeting is required to take place immediately preceding a termination hearing per the terms of the CBA.  *See* Doc. 65-6 at 10 (noting that "immediately preceding a scheduled investigation, the Union and Metro-North representatives will meet . . . to resolve the matter").  Davis alleges that Metro-North improperly cancelled the required pre-hearing meeting prior to the disciplinary hearing and rescheduled the disciplinary hearing to September 5 because it had already decided to fire him.  Doc. 58 ¶ 39.

Sometime before the disciplinary hearing, Davis alleges that Andrew Paul, Vice President of Labor Relations, allegedly communicated to the union that he intended to fire Davis.  Doc. 58 ¶ 25.  Davis also claims that John Longobardi, Deputy Chief of Field

---

[2] For two trains to become "hitched" means that the "knuckles" of the two trains became connected.

Operations, told a union representative that he was "forced" to sign Davis' dismissal letter. *Id*.

At the hearing held on September 5 and 19, 2018, Davis defended against the charges. Doc. 58 ¶ 22.[3] He testified that (1) he could not see the approaching train and therefore could not notify the engineer; (2) the other crewmember initiated the emergency protocol by calling the RTC; (3) his conductor certificate fell out of his pocket earlier that day; and (4) unhitching trains does not constitute a "reverse move" requiring authorization. *Id*. Davis also claimed that the engineer took full responsibility for the incident. *Id*. ¶ 24.

A couple of weeks after the final disciplinary hearing, Metro-North offered to settle the matter. *Id*. ¶ 46. On September 26, 2018, Davis was informed that Metro-North would not terminate his employment as long as he signed "an admission of guilt waiver" and forfeited his right to an appeal. *Id*.; Doc. 65-8 at 2. Sometime thereafter, Davis rejected Metro-North's offer. Doc. 58 ¶ 46. He was terminated on October 9, 2018. *Id*. ¶ 3.

Approximately one year later, on October 8, 2019, Davis filed a complaint against Metro-North with the NYSDHR and the Equal Employment Opportunity Commission ("EEOC") alleging that Metro-North engaged in unlawful racial discrimination and retaliation motivated by his prior complaint about racial discrimination. *Id*. ¶ 5; Doc. 65-9 at 2. The NYSDHR issued a decision on June 24, 2020, finding no probable cause for

---

[3] Neither the SAC nor the motion to dismiss the SAC mention what evidence, if any, was presented by Defendants. Doc. 58 at 6; Doc. 66 at 13.

Davis' allegation.  *Id.*  The EEOC adopted the NYSDHR's no probable cause determination.  Doc. 25 at 13; Doc. 58 ¶¶ 5, 6.

At the same time, ACRE, on behalf of Davis, appealed Metro-North's determinations for the 2016 and 2018 incidents to the Special Board of Adjustment for arbitration on grounds that his termination was arbitrary, capricious and excessive.  Doc. 58 ¶ 2.  On November 18, 2019, and December 10, 2019, pursuant to the CBA, Davis and Metro-North participated in an arbitration.  Docs. 65-10; 65-11.  The arbitrator, who is more than 90 years old, thereafter upheld Metro-North's decisions regarding Davis's prior suspension and his termination.  *Id.*; Doc. 58 ¶ 56.

### B.  Procedural History

Davis brought this action *pro se* against Metro-North on January 11, 2021.  Doc. 1.  On September 29, 2021, Davis filed a first amended complaint ("FAC").  Doc. 22.  Defendants moved to partially dismiss the FAC on October 21, 2021.  Doc. 23.  After the motion was fully briefed, Davis retained counsel.  Doc. 41.  Counsel for Davis subsequently indicated to the Court that Davis wished to withdraw his claims under the NYSHRL, as well as his claims under Title VII against the Individual Defendants.  Doc. 48.

On June 21, 2022, the Court issued the June 2022 Opinion granting Defendants' partial motion to dismiss and allowing Davis limited leave to amend his § 1983 equal protection and procedural due process claims.  Doc. 52 at 23.  Plaintiff filed a SAC on August 19, 2022.[4]  Doc. 58.

---

[4] Additionally, Davis brings Title VII claims based on the July 2018 collision not originally dismissed in the Court's June 2022 Opinion.  Doc. 52 at 18-20; Doc. 58 ¶¶ 1, 60-62.

On October 6, 2022, Defendants filed the instant motion to dismiss the SAC. Doc. 64.  In Davis' memorandum of law in opposition to the motion, he asks the Court to convert the Rule 12(b)(6) motion into a motion for summary judgment because Metro-North had recently produced new documents through discovery that are allegedly highly probative.  Doc. 74 at 11–12.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  *Id.* (citing *Twombly*, 550 U.S. at 570).  Pleadings that tender "naked assertions devoid of further factual enhancement," *id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted), or "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice, *id.* (quoting *Twombly*, 550 U.S. at 555).  It is within the Court's discretion to dismiss a complaint "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Shomo v. New York*, 374 F. App'x 180, 182 (2d Cir. 2010) (quoting *Salahuddin*, 861 F.2d at 42).

When the defense files a motion to dismiss, a district court "can consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). For a document to be incorporated by reference, "the complaint must make 'a clear, definite, and substantial reference to the document[ ].'" *DeLuca v. Access IT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2012) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)).

## B. Rule 12(d)

In the event that "on a motion under Rule 12(b)(6) matters outside the pleadings are presented to and not excluded by the Court [meaning that the matters were not alleged in the complaint, attached to the complaints are exhibits, or incorporated by reference], the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. Rule 12(d). Under those circumstances, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. "Where a document is not incorporated by reference, the court may nevertheless consider it where the . . .[document is] 'integral'" *DiFolco*, 622 F.3d at 111. When documentary evidence submitted by a defendant is "integral" to the complaint, the court may nevertheless consider the evidence without converting the motion to dismiss to a motion for summary judgment pursuant to Rule 12(d). *Chambers*, 282 F.3d at 153 (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

Evidence is "integral" to the complaint "where the complaint 'relies heavily upon its terms and effect.'" *Id.* at 153–154 (quoting *Int'l Audiotext Network, Inc*, 62 F.3d at 72

(2d Cir. 1995)).  In order for the contents of a document to be deemed integral to the complaint, they must be deemed necessary to the plaintiff's statement of a claim under Rule 8.  *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008).

## C.  Dismissal with Prejudice

Parties are entitled to amend their pleadings once, as a matter of course, within 21 days after serving the pleading or, if a responsive pleading is required, within 21 days after service of a responsive pleading or a Rule 12 motion.  Fed. R. Civ. P. 15(a)(1).  A party may not otherwise amend its pleading without either the written consent of the opposing party or leave of the Court.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id*.  The Supreme Court has held that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

Where a plaintiff is "unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."  *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *see also Herbert v. Delta Airlines*, No. 12 Civ. 1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (dismissing complaint with prejudice where "[the] [c]ourt previously granted [the *pro se* plaintiff] leave to replead, identifying his original complaint's deficiencies" and "[the

plaintiff's] amended complaint fail[ed] to correct any of these deficiencies," explaining that "the [c]ourt lacks the basis to believe further amended pleadings would fare any better").

## III.   DISCUSSION

Davis brings three claims arising out of the July 2018 collision.  The first cause of action alleges racial discrimination in violation of Title VII.  The second cause of action alleges selective enforcement in violation of the Fourteenth Amendment.  The third cause of action alleges a violation of his procedural due process rights in violation of the Fourteenth Amendment.  Doc. 58 ¶¶ 1, 60–68.[5]

Davis primarily relies on three separate groups of comparators to state his Title VII claim.  *Id.* ¶¶ 41–59.  First, Davis relies on a Metro-North engineer that was on the train with him on the day of the collision.  *Id.* ¶¶ 41–46.  Second, Davis relies on a group of Metro-North employees who were involved in a collision but were not terminated.  *Id.* ¶¶ 47–59.  Lastly, Davis cites several Metro-North employees who, like him, were on a last chance warning, committed company infractions, but were not terminated.  *Id.* ¶¶ 49–59.

Davis also argues that Defendants discriminated against him because of his race, as evidenced by the alleged disparate treatment given to him in comparison to non-black employees that were similarly situated.  Doc. 58 ¶¶ 1, 47–59.  To support his Title VII and disparate treatment claims, Davis provided the same list of comparators.  *Id.*

Lastly, Davis argues that Defendants did not accord him due process when they terminated him because he did not receive adequate notice, Defendants violated the CBA,

---

[5] Davis voluntarily dismissed his Title VII claim against Individual defendants.  Doc. 48 at 1; Doc. 52 at 18.

the disciplinary hearing was not conducted by a neutral decisionmaker, and the arbitrator that presided over his case was inadequate because he was "mentally infirm" as a result of his advanced age.  Doc. 58 ¶¶ 21–25, 31–40.

## A.  Converting Rule 12(b)(6) Motion Into Motion for Summary Judgment

As a preliminary matter, the Court considers Davis' request to convert Defendants' motion to dismiss into a motion for summary judgment because Davis incorporated recently produced documents into his pleadings.  Doc. 74 at 11–12.[6] Defendants argue that converting the motion is unnecessary because Davis did not refute that the documents he cites are referenced in or are integral to the SAC.  Doc. 75 at 6.

Davis relies on seven exhibits that he alleges are "matters outside the [SAC]." Fed. R. Civ. P. Rule 12(d).  The Court finds, however, that the exhibits Davis introduces were either incorporated by reference or otherwise integral to the SAC.

### 1.  Exhibits 1, 3, 4, and 6

Davis introduces four emails he alleges show an intent by the Individual Defendants to fire him before any investigation concluded.  Doc. 74 at 10–11; *see* Doc. 73-2 at 2; Doc. 73-3 at 2; Doc. 73-4 at 2; Doc. 73-6 at 2.  However, Davis had already alleged this claim before the NYSDHR and again in the SAC when he noted that his termination hearing was procedurally flawed since Defendants had already decided they would fire him.  Doc. 58 ¶ 25; Doc. 65-9 at 3.  Even if Davis never previously specifically cited to these exhibits, he relied "heavily upon [their] terms and effects,

---

[6] Pursuant to the Initial Case Management Order and in accordance with Fed. R. Civ. P. 16, the parties conducted discovery concurrently with the several motions.  Doc. 45.

thereby rendering the document 'integral' to the complaint." *DiFolco*, 622 F.3d at 111 (citation omitted).  Thus, the emails were integral to the SAC.

### 2.  *Exhibits 2 and 5*

Exhibit 2 is an email from Mike Donnarumma, a superintendent for Metro-North, highlighting the charges against Davis and the other crew members involved in the collision.   Doc. 73-2 at 2–3.  Davis argues that this exhibit shows that the only appropriate charge against him was his failure to carry his conductor certification, but that termination is not a proportionate punishment to not carrying the certificate.  Doc. 74 at 23; *see also id.*  As he argues, the disproportionate treatment he was subject to is evidence that Metro-North discriminated against him.  Doc. 74 at 23.

Exhibit 5 is an email from Jane Murawski, a Metro-North employee, showing the disciplinary history of Craig Davis, the engineer next to Davis in the July 2018 collision. Doc. 73-5 at 3.  Davis argues that Defendants misrepresented the engineer's disciplinary record by characterizing it as "clean" for ten years when in fact he had been involved in several incidents within that time.  Doc. 74 at 10–11.  Davis attaches exhibit 5 as evidence that Defendants were personally targeting him when they chose to impose a harsher punishment on him while justifying the lenient one imposed on the engineer. Doc. 74 at 14; Doc. 73-2 at 3.

Davis has previously averred these arguments before the NYSDHR and in the SAC.  Doc. 58 ¶¶ 22–23; Doc. 65-9 at 4–5.  The charges listed in exhibit 2 were previously listed in the SAC.  Doc. 58 ¶ 21.  Even if Davis never explicitly mentioned the engineer's previous disciplinary history from exhibit 5 in the SAC, he formerly has alleged that he was not treated the same as the engineer.  *Id.* ¶¶ 24, 40, 41, 44.  Therefore,

both exhibits were either incorporated by reference or integral to the SAC.  Doc. 65-9 at

4–5; Doc. 58 ¶¶ 24, 40–45.

     *3. Exhibit 7*

    Finally, exhibit 7 is a determination letter for a separate collision that involved

Danielle Bonge ("Bonge"), a white engineer at Metro-North who, like Davis, was

involved in a collision after having been issued a last chance warning.  Doc. 73-7 at 2.

Similarly, Davis had already relied on this information to support his charge of racial

discrimination before the NYSDHR and in the SAC.  Doc. 58 ¶¶ 47–50; Doc. 65-9 at 5.

As a result, the exhibit was incorporated by reference in the SAC.

    Even if the Court were to find that the exhibits were not incorporated by reference

because the specific exhibits were not "substantial[ly] reference[d]" in the SAC, the

Court finds the exhibits were "integral" because they were necessary to Plaintiff's

statement of a claim under Rule 8.  *DeLuca*, 695 F. Supp. 2d at 60.  As previously noted,

multiple of Davis' claims in the SAC stem from the proposed exhibits, thereby "rel[ying]

heavily upon [their] terms and effect."  *Chambers*, 282 F.3d at 153–154.  As such, the

Court may consider the attached exhibits.

    When the Court finds that evidence is integral, it does not need to convert the

motion into a motion for summary judgment.  *Chambers*, 282 F.3d at 153.  Therefore,

Davis' request to convert the motion to dismiss to a summary judgment is denied.

**B. Title VII Employment Discrimination Claims**

    Davis alleges that Metro-North violated Title VII when it discriminated against

him because of his race.  Doc. 58 ¶¶ 60–62; Doc. 74 at 20–30.  Employment

discrimination claims under Title VII are analyzed under the burden-shifting framework

established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir. 2016). Under that framework, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Id*. at 802–03. If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id*. at 804. Ultimately, the plaintiff will be required to prove that the defendant acted with discriminatory motivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). At the pleading stage, however, the facts alleged must merely "give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Id*. at 311. Thus, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a *prima facie* case.

To establish a *prima facie* case of discrimination under either Title VII Davis must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003). The Defendants do not appear to contest any but the fourth element; that the adverse action took place under circumstances giving rise to the inference of discrimination. Doc. 66; Doc. 74 at 20.

In the absence of an express discriminatory statement, a plaintiff may support an inference of discrimination by demonstrating that similarly situated employees outside of

the plaintiff's protected class were treated more favorably.  *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999).

### a.   Similarly Situated Comparators

Importantly, "[t]o support such an inference, a complaint 'must compare' the plaintiff to employees who are 'similarly situated in all material respects.'"  *Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (quoting *Norville*, 196 F.3d at 95). A plaintiff need not show that a comparator was an "*identically* situated employee," just that she was "similarly situated in all material respects."  *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) (quoting *Shumway v. United Parcel Service*, 118 F.3d 60, 64 (2d Cir. 1997)) (emphasis in original).  Employment characteristics which can support a finding that two employees are "similarly situated" include "similarities in education, seniority, performance, and specific work duties."  *DeJesus v. Starr Technical Risks Agency, Inc.*, 03 Civ. 1298 (RJH), 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004) (citation omitted).  Further, such employee "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."  *Kearney v. ABN AMRO, Inc*., 738 F. Supp. 2d. 419, 426 (S.D.N.Y. Sept. 15, 2010) (quoting *McGuinness*, 263 F. 3d at 54) (internal quotation marks omitted).

Davis primarily relies on three separate sets of comparators.  Doc. 58 ¶¶ 47–59. In response, Metro-North argues that the comparators are not similarly situated to Davis. Doc. 66 at 16–20.

The first comparator Davis cites is the engineer, Craig Davis, who was next to him on the day of the July 2018 collision.  Doc. 58 ¶¶ 40–46.  However, the engineer is not

similarly situated because he signed an agreement to resolve the dispute while Davis did not.  Doc. 58 ¶ 46; Doc. 66 at 17–18.[7]

The second group of comparators involve Metro-North employees who were involved in a train collision similar to Davis but were not terminated.  Doc. 58 ¶¶ 47–52.  Specifically, Davis argues that Bonge, a white engineer, is similarly situated because she was both on a last chance warning when involved in a train collision.  *Id.* ¶ 49.  Despite the collision, Bonge was issued another last chance warning and allowed to return to work.  *Id.*  Davis argues that unlike Bonge, he was terminated because of race discrimination.  *Id.*  Davis' claim fails, however, because he was offered an opportunity to return to work like Bonge but declined it.  Doc. 58 ¶ 46.[8]

Lastly, the third group of comparators Davis cites are seven employees who were on a last chance warning, were brought up for other disciplinary charges, but were not terminated by Metro-North.  *Id.*  ¶¶ 53–59.  However, the allegations regarding these employees do not not meet the plausibility standard because they are conclusory.  For instance, Davis argues in summary fashion that an unauthorized reverse move conducted by an employee named Tom Dunne was a violation of the same or greater severity as the one Davis was charged with.  Doc. 58 ¶ 54.  In fact, there is no evidence that a post-collision unauthorized reversal is of the same seriousness as an unauthorized reversal that

---

[7] Nor does the SAC or any other evidence presented state the race of Craig Davis, further undermining the argument that this employee is similarly situated to Davis.  Doc. 58.

[8] Metro-North employees Dan Magro and Dan Hannon were also involved in the same incident with Bonge.  Doc. 58 ¶¶ 51, 52.  Davis asserts that he was singled out due to his race as indicated by the fact that neither one of these employees were punished for the incident.  *Id*.  In both cases, Davis fails to offer evidence to state the employees' previous disciplinary history, the extent of their culpability in regard to the collision, and whether Defendants performed the same unauthorized actions that Davis did.  *Id*.  For example, there is no evidence that either employee failed to carry their conductor license or performed an unauthorized reverse move.  *Id.* ¶¶ 21, 51, 52.

is conducted unrelated to a collision.  *Id.*  In the case of the remaining comparators, Davis concludes, without offering any evidence, that testing positive for illegal substances, cash remittance violations, and criminal charges for activities on Metro-North property are materially comparable to the charges against him.  *Id.* ¶¶ 55–59.

Relying on conclusory statements about alleged comparators fails to plausibly identify similarly situated employees.  *See generally Bishop v. Best Buy, Co.*, No. 08 Civ. 8427 (LBS), 2010 WL 4159566, at *11–12 (S.D.N.Y. Oct. 13, 2010).  Even if the Court were to conclude that these other offenses were sufficiently comparable, Davis would still fail to show the employees were similarly situated because there is no evidence that the employees had a similar job, responsibilities, seniority, or were under the same working conditions as Davis.  *DeJesus*, 03 Civ. 1298 (RJH), 2004 WL 2181403, at *9; Doc. 58 ¶¶ 55–59.  Because none of the identified individuals could objectively be considered similarly situated in all material respects, Davis failed to produce evidence of discrimination vis-à-vis similarly situated employees.

### b.  *Procedural Irregularities and Disproportionate Treatment*

In his memorandum of law, Davis argues two further points in support of his Title VII claim.  Doc. 74 at 20–25.  Davis alleges that in deviating from procedural norms and terminating him for a minor infraction, Defendants created an inference of discrimination.  *Id.*

Davis' procedural argument stems from his claim that the Individual Defendants had already decided they would fire him before the investigation was concluded and because Defendants violated the CBA's pre-hearing meeting requirement.  *Id.* at 20–23. Davis' disproportionate treatment argument is chiefly based on the assumption that the

only reason Davis was terminated was because he was not carrying his conductor certificate on the day of the collision. *Id.* at 23–25. As Davis argues, termination for such a minor violation is disproportionate, alluding that the Defendants used the violation as a pretext. *Id.*

Before a plaintiff can show that the defendant's stated motivation for termination is a pretext, the third step of the *McDonnell Douglas* analysis, he first must establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff can adequately meet his burden, the burden shifts to the Defendants to offer a legitimate, nondiscriminatory reason for the termination. *Id.* Finally, once defendants have met their burden, the plaintiff can show that the defendant's reason is a mere pretext. *Id.* at 804. As Defendants point out, Davis' allegations do not make out a *prima facie* case of discrimination, but rather corroborate the Defendants' alleged pretextual motivations for terminating his employment, the third step under *McDonnell Douglas*. Doc. 75 at 12–14; *see also* Norris *v. Metro-North Commuter R.R. Co.*, 522 F. Supp. 2d 402, 409 (D. Conn. 2007) (explaining that Metro-North's deviation from procedural norms was sufficient to prove pretext).

To sufficiently make out a *prima facie* case, Davis needed to establish at the outset that he was terminated under circumstances giving rise to the inference of discrimination. *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 247 (E.D.N.Y. 2015). Even if Davis did not produce any direct evidence, he could have demonstrated an inference of discrimination by (a) indirectly showing that the protected activity was followed closely by discriminatory treatment or; (b) indirectly though other evidence such as disparate treatment of fellow employees who engaged in similar conduct. *Id.* at 250. First, Davis

did not sufficiently state a claim that his termination followed closely with Metro-North's discriminatory decision to fire him since there were other, non-discriminatory reasons for his termination.  *Id.* at 252.  As the arbitrator noted, "[e]ven the failure to have the required certificate on him as he worked [under a duty to rigorously and precisely carry out all rules and requirements,] evidences disregard for the Carrier's requirements [and thus Davis' claims are denied]."  Doc. 65-11 at 3.  Second, as previously noted, Davis fails to sufficiently plead comparators that were similarly situated to prove an inference of discrimination.  Doc. 58 ¶¶ 47–59.  Consequently, Davis has failed to establish a *prima facie* case.  Therefore, his Title VII claim is dismissed.

### C.  Section 1983 Claims

Section 1983 safeguards a plaintiff's rights against discrimination based on race. *Littlejohn*, 795 F.3d at 297, 314, 320.  To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or federal law was violated; and (2) the alleged violation was committed by a person acting under color of state law.  42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).  Section 1983 creates no substantive rights, but rather provides a procedure for enforcing existing federal constitutional and statutory rights.  *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

It is well-established that employment discrimination based on race and retaliation for discrimination complaints constitute unlawful deprivation of rights, privileges, or immunities under the Equal Protection Clause of the Fourteenth Amendment. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 81 (2d Cir. 2015).  To establish individual liability under

§ 1983, a plaintiff must show that defendants were exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981).  A state employee acting in his official capacity is generally sufficient to establish the employee as a state actor acting under color of state law.  *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004).  Here, Defendants were acting in their official capacity by making an employment determination over Davis; thus, Defendants were state actors acting under the color of state law.[9]

Davis alleges that Defendants violated § 1983 by subjecting him to more severe disciplinary measures than comparators and by not affording him sufficient due process in connection with his termination.  Doc. 58 ¶¶ 1, 63–68.  Specifically, Davis alleges a violation of the Fourteenth Amendment based on Defendants' more severe enforcement of disciplinary policies against him than against other employees.  Doc. 58 ¶¶ 47–59. Defendants seek to dismiss the claim because (1) pursuant to the selective enforcement doctrine,[10] Davis failed to provide sufficiently similar comparators to plausibly allege he received disparate treatment due to Defendants' "malicious intent to injure" him and (2) Davis' due process allegations in connection with his termination are not protections guaranteed by the Constitution.   Doc. 66 at 9–10.

---

[9] Neither party disputes that Defendants were acting in their official capacity when they terminated Davis and therefore were acting under color of state law.  Doc. 58; Doc. 66.

[10] Davis originally brought the equal protection claim under both "class of one" and selective enforcement. Doc. 31-4.  However, as the Court previously explained in the June 2022 Opinion, "class of one" claims cannot be asserted in the context of public employment.  Doc. 52 at 15.

*(a) Selective Enforcement Claims*

To state a viable claim under the selective enforcement theory, a plaintiff must show that (1) he was treated differently from other similarly situated employees and (2) such treatment was motivated by the malicious or bad-faith intent to injure a person. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007).  Malice-based claims require proof that the disparate treatment was caused by an impermissible motivation.  *Bizzaro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005).  To prove disparate treatment, a plaintiff must show that he and his comparators are similarly situated in all material respects.  *Artec Constr. & Dev. Corp. v. City of New York*, No. 15 Civ. 9494 (KPF), 2017 WL 5891817, at *10 (S.D.N.Y. Nov. 28, 2017).  Similarly situated does not mean identical, but rather "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases."  *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).  The resemblance test relies on an objective standard.  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011).  The test is satisfied when a plaintiff provides comparators a prudent person would objectively find to be roughly equivalent with the plaintiff.  *Id.*

Although a plaintiff is not required to proffer evidence of comparators at the pleading stage, the plaintiff must nonetheless allege sufficient facts to allow the Court to determine whether it is plausible that a jury could determine that the alleged comparators are similarly situated and were treated differently.  *Rosario v. Town of Mount Kisco*, No. 16 Civ. 8766 (NSR), 2018 WL 2209487, at *7 (S.D.N.Y. May 11, 2018).  To determine whether the comparator's conduct is comparable to that of a plaintiff, courts look at (1) whether the plaintiff and the alleged comparators were subject to the same workplace

policy; and (2) whether the conduct at issue was of comparable seriousness. *Graham*, 230 F.3d at 40.

As previously discussed, Davis' list of comparators did not sufficiently meet the *prima facie* step under *McDonnell Douglas*. 411 U.S. at 802. Title VII and § 1983 are subjected to the same standard. *See Littlejohn*, 795 F.3d at 312 ("[Plaintiff's] disparate treatment claim under Title VII, § 1981, and § 1983 is subject to the burden shifting evidentiary framework set forth in *McDonnell Douglas*.") (citing *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010)).

Even if the Court takes a broad view and concludes that the employees cited were subject to the same workplace policy, Davis failed to establish that the other Metro-North employees engaged in conduct similar to him. *See generally* Doc. 58. Thus, he fails to plausibly state that he was subjected to selective enforcement of Metro-North disciplinary and termination policies on the basis of his race. Therefore, Davis' selective enforcement claims are dismissed.

 (b) *Procedural Due Process*

To state a claim alleging a deprivation of procedural due process, a plaintiff must (1) identify "a protected interest in property or liberty;" (2) establish that the state deprived the plaintiff of that right; and (3) show that the deprivation occurred without due process of law. *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015). A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent just cause for discharge. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). A public employee is entitled to notice and a limited opportunity to be heard prior to termination. *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) (citing

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985)).  The notice, either

oral or written, must include the "charges against [the employee], an explanation of the

employer's evidence, and an opportunity to present [the employee's] side of the story."

*Loudermill*, 470 U.S. at 546.  The requirement of a hearing is a minimal one, and it does

not require a neutral decisionmaker.  *Locurto*, 264 F.3d at 173–74.  Therefore, when a

public employee has a protected interest in continued employment, procedural due

process is satisfied when an employer provides notice and a minimal opportunity to

present the employee's side of the story.  *Quire v. City of New York*, No. 19 Civ. 10504

(RA), 2021 WL 293819, at *4 (S.D.N.Y. Jan. 28, 2021).

　　　The crux of Davis' procedural due process allegations are that he did not receive

adequate notice, that the pre-termination process was deficient in violation of the CBA,

that his termination hearing was predetermined, and that the arbitrator that ruled on his

case was inadequate because of his age.  Doc. 58 ¶¶ 8–46; Doc. 74 at 6–7.  Defendants

argue that Davis' allegations do not rise to a deprivation of due process because (1) the

written notice Davis received concerning the events on July 12, 2018 more than satisfied

due process; (2) the alleged breach of the CBA by the failure to conduct a pre-hearing

meeting does not arise to a constitutional issue; (3) the Constitution does not require a

neutral decisionmaker and; (4) Davis' claim that the arbitrator that resolved the dispute

was mentally infirm because he is over ninety years old is baseless and contradicted by

the fact that ACRE, Davis' Union, had previously engaged the same arbitrator.

Doc. 66 at 25–30.

　　　Here, the SAC makes clear that prior to Davis' termination, Metro-North sent him

a written notice dated July 19, 2018, which contained the charges, their explanation, date

and place of a formal investigation hearing, and explanation of rights pursuant to the CBA.  Doc. 58 ¶¶ 21, 33.  As previously noted, in *Loudermill*, the Supreme Court stated that the notice, either oral or written, must include the "charges against [the employee], an explanation of the employer's evidence, and an opportunity to present [the employee's] side of the story."  *Loudermill*, 470 U.S. at 546.  Here, the notice sufficiently satisfies those requirements.  *Id.*

Davis alleges that Defendants improperly deprived him of the right to a pre-hearing meeting and settlement under the CBA.  Doc. 58 ¶¶ 32–33, 38–39.  The pertinent CBA provision requires that prior to the scheduled hearing, the union and Metro-North representatives meet for the purpose of attempting to resolve the matter.  Doc. 65-6 at 10. The July 2018 letter to Davis regarding the disciplinary charges scheduled a pre-hearing meeting for July 25, 2018, at 9:00 am.  Doc. 65-5 at 2.  Davis alleges that Metro-North unilaterally cancelled the pre-hearing meeting in violation of the CBA.  Doc. 58 ¶ 39. Defendants correctly note that the Fourteenth Amendment does not require Metro-North to participate in a pre-hearing meeting despite the CBA's requirement.  *Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir.1987) (finding a violation of the CBA is a contract dispute that does not give rise to a cause of action under § 1983).[11]  Moreover, Davis acknowledges that prior to the conclusion of the investigation he rejected Metro-North's proposal to settle premised on his admission of guilt and waiver of a right to appeal the disciplinary measures.  Doc. 58 ¶ 46.

Davis' termination hearing was held over two days, September 5 and 19, 2018, where he testified.  Doc. 58 ¶ 22.  Davis alleges that his termination was predetermined

---

[11] Here, Davis did not bring a breach of contract claim.

prior to the hearing, and that the hearing thus lacked impartiality. *Id.* ¶¶ 21 24, 25, 31. However, the Fourteenth Amendment does not require a neutral decisionmaker in pre-termination hearings. *See Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1077 (2d Cir. 2021) (dismissing plaintiff's allegations premised on arbitrator's bias because due process does not require a neutral decisionmaker in pre-termination proceedings); *Faghri v. Univ. of Conn.*, 621 F.3d 92, 99 (2d Cir. 2010) (stating that a pre-termination hearing need not be conducted before a neutral decisionmaker).

Lastly, Davis argues, the arbitrator was mentally infirm due to his old age and as a result this procedure was insufficient to satisfy due process. Doc. 58 ¶ 26. Davis' claim fails because he does not offer any evidence to support this allegation. *Id.* As Defendants point out, until this case, Davis' own union allegedly previously engaged with the same arbitrator without objecting to his age. Doc. 66 at 28–29; Doc. 74 at 18–19.

The SAC shows that Davis was afforded a termination hearing where he was allowed to testify and introduce witnesses. Doc. 58 ¶ 22–23. Moreover, Davis was allowed to file his claims before the NYSDHR and to be heard by an arbitrator. *Id.* ¶¶ 5–7. Because Davis received an adequate opportunity to present his version of events, Davis fails to plead sufficient facts to allege that he was not accorded due process. *See Leary v. Civ. Serv. Emps. Ass'n*, No. 11 Civ. 716 (CS), 2012 WL 1622611 (S.D.N.Y. May 9, 2012) (dismissing plaintiff's due process claims where the plaintiff received a notice and had a pre-termination hearing), *aff'd sub nom. Leary v. Civ. Serv. Empls. Ass'n Region 3*, 516 F. App'x 42 (2d Cir. 2013). Accordingly, Davis' claims that he was not afforded sufficient procedural due process are dismissed.

## IV.   DISMISSING WITH PREJUDICE

Davis argues that if the Court dismisses the suit, it must be without prejudice because through discovery, he now possesses facts previously unknown to him. Doc. 74 at 12.  Defendants in response argue that this action should be dismissed with prejudice because Davis has twice amended his pleadings and the second time he was represented by counsel.  Doc. 66 at 30.  In Davis' opposition he attached seven exhibits which purportedly could determine the outcome of a dispositive motion.  Doc. 74 at 11. As previously explained, the exhibits attached by Davis are relied on by the Court in considering the Rule 12(b)(6) motion.

Importantly, when litigants are given a full and fair opportunity to litigate an issue, they are not entitled to multiple attempts when doing so would be futile.  *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (holding that leave to amend may be denied based on futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims") (citation and internal quotation marks omitted); *see Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (holding that to determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss pursuant to FRCP 12(b)(6)).

Here, Davis had two opportunities to amend his pleadings, the second time with counsel.  Doc. 22; Doc. 41; Doc. 58.  Despite amending his pleadings, he failed to state sufficient factual matter to state a claim that is plausible on its face. *Ashcroft*, 556 U.S. at 678.  Accordingly, the SAC is dismissed with prejudice.

## V.      CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED

WITH PREJUDICE.  The Clerk of the Court is respectfully directed to terminate the

motion, Doc. 64, and close the case.


It is SO ORDERED.


Dated:    June 20, 2023
          New York, New York

                                        _____
                                             Edgardo Ramos, U.S.D.J.