UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
RHULAND DAVIS,                                                    :
                Plaintiff,                                :
:
        - against -                                          :    1:21-cv-00387 (ER) (BCM)
:
METRO NORTH COMMUTER RAILROAD,                                    :
ANDREW PAUL, and JOHN LONGOBARDI,                                 :
:
                Defendants.                               :
------------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT</u>**

                METRO-NORTH COMMUTER RAILROAD
                HALEY STEIN
                ACTING VICE PRESIDENT & GENERAL COUNSEL
                    By: Jennifer A. Mustes
                    420 Lexington Ave., 11th Floor
                    New York, New York 10170
                    (212) 340-2504
                    jmustes@mnr.org

                *Attorneys for defendants Metro-North Commuter
                Railroad, Andrew Paul, and John Longobardi*

March 21, 2025

# TABLE OF CONTENTS

                                                                      **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.      DAVIS' CLAIMS ARE NOT IMMUNE FROM SUMMARY JUDGMENT ................... 2

II.     DAVIS HAS NOT RAISED AN INFERENCE OF RACIAL
        DISCRIMINATION ............................................................................................. 2

        A.     Davis' Comparator Analysis Fails ........................................................... 2

        B.     Davis Cannot Reply on Purported Procedural Irregularities .................... 5

        C.     Davis Has Not Identified Shifting Explanations for His Termination ..... 8

        D.     The Opposition Ignores Evidence Weighing Against Discrimination ..... 9

III.    DAVIS HAS NOT SHOWN MALICIOUS SELECTIVE ENFORCEMENT .................... 9

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bizzarro v. Miranda*,
  394 F.3d 82 (2d Cir. 2005) .................................................................................9

*Collins v. N.Y. City Transit Auth.*,
  305 F.3d 113 (2d Cir. 2022) ...............................................................................9

*Davis v. Metro-North Commuter Railroad et al.*,
  23-1041-cv, 2024 U.S. App. LEXIS 7918 (2d Cir. Apr. 3, 2024) .....................3

*Henkin v. Forest Labs.*,
  No. 01 Civ. 4255, 2003 U.S. Dist. LEXIS 3060 (S.D.N.Y. Mar. 5, 2003),
  *aff'd*, 2004 U.S. App. LEXIS 4470 (2d Cir. Mar. 9, 2004) ..............................2

*Layne-Williams v. Radius Global Sols., LLC*,
  No. 22 Civ. 340, 2022 U.S. Dist. LEXIS 213864 (S.D.N.Y. Nov. 28, 2022) ...7

*Leeber Realty LLC v. Trustco Bank*,
  316 F. Supp. 3d 594 (S.D.N.Y. 2018) ...............................................................6

*Maraschiello v. City of Buffalo Police Dep't*,
  709 F.3d 87 (2d Cir. 2013) .................................................................................2

*Meiri v. Dacon*,
  759 F.2d 989 (2d Cir. 1985) ...............................................................................2

*Norris v. Metro-North Commuter R.R. Co.*,
  522 F. Supp. 2d 402 (D. Conn. 2007) ................................................................4

**Statutes and Rules**

42 U.S.C. §§2000e to 2000e-17 ..........................................................................*passim*

Federal Rule of Civil Procedure 12(b)(6) .............................................................2

Federal Rule of Civil Procedure 56 ......................................................................2

Defendants[1] respectfully submit this reply memorandum of law in response to Plaintiff's opposition to their motion for summary judgment (ECF No. 110, "Opposition" or "Opp.").

## PRELIMINARY STATEMENT

The Opposition largely restates Davis' prior submissions in this action, without engaging with the arguments in Defendants' moving papers, such as the distinguishing of Davis' legal authority, or the explanation of the import of the neutral arbitrator's decision upholding Davis' termination. Ultimately, although Davis *alleged* Title VII and selective enforcement claims, they are not supported by the record evidence and thus should be dismissed on summary judgment.

Regarding Davis' Title VII claim, he has not satisfied his burden of raising an inference of racial discrimination. His comparator analysis fails because he improperly overlooks distinguishing factors between his and other employees' disciplinary histories, misconduct, and willingness to accept responsibility and enter into return-to-work agreements. He then tries to rely on purported procedural irregularities in his discipline, but he neither shows that they are relevant to his *prima facie* case, nor that they occurred as claimed. His accusation of "shifting explanations" for his termination fares even worse, as no such variation is even articulated, much less documented. Finally, Davis completely overlooks highly probative evidence against an inference of racial discrimination, such as the arbitration decision upholding his termination.

Davis' malicious selective enforcement claim also should be dismissed. His additional purported comparator on this claim, Engineer Craig Davis, is in fact distinguishable based on his interest in entering into a return-to-work agreement and disciplinary history. Furthermore, the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Defendants' memorandum of law in support of their motion for summary judgment (ECF No. 104, "Mov. Br.").

1

Opposition fails to demonstrate any malice towards Davis that caused differential treatment, as would be required to establish this oft-dismissed type of claim.

## ARGUMENT

### I. DAVIS' CLAIMS ARE NOT IMMUNE FROM SUMMARY JUDGMENT

The Opposition suggests that Defendants' motion should be denied merely because Davis has alleged employment discrimination. Opp. at 11-12. However, "summary judgment is by no means precluded in employment discrimination cases. Indeed, . . . the 'salutary purposes of summary judgment . . . apply no less to discrimination cases than to . . . other areas of litigation.'" *Henkin v. Forest Labs.*, No. 01 Civ. 4255, 2003 U.S. Dist. LEXIS 3060, at *10 (S.D.N.Y. Mar. 5, 2003) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)), *aff'd*, 2004 U.S. App. LEXIS 4470 (2d Cir. Mar. 9, 2004) (summary order).

Likewise, the Second Circuit's holding that Davis properly *pleaded* Title VII and selective enforcement claims under Rule 12(b)(6) does not compel denial of Defendants' Rule 56 motion. *Cf.* Opp. at 12; *see, e.g.*, *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) ("It was not error for the court to revisit a conclusion based on factual allegations taken as true at the motion to dismiss stage, and determine, based on undisputed evidence at the summary judgment stage, that no reasonable jury could find" for plaintiff).

### II. DAVIS HAS NOT RAISED AN INFERENCE OF RACIAL DISCRIMINATION

The Opposition fails to establish the requisite inference of racial discrimination to establish a *prima facie* Title VII claim and resist dismissal on summary judgment.

#### A. Davis' Comparator Analysis Fails

The Opposition relies primarily on Engineer Danielle Bonge and Conductor Daniel Magro as comparators for Davis' Title VII claim. Opp. at 12-14. However, with respect to

Bonge, the Opposition disregards the fact that the Second Circuit only considered her a proper comparator because, under Rule 12(b)(6), it accepted Davis' allegation that "Bonge received a last chance waiver and later was working on a train that collided with a passenger train. [Metro-North] did not terminate Bonge for her role in the collision, but instead gave her another last chance waiver." *Davis v. Metro-North Commuter Railroad et al.*, 23-1041-cv, 2024 U.S. App. LEXIS 7918, at *7 (2d Cir. Apr. 3, 2024) (summary order). However, discovery has completely contradicted this allegation because, as Davis admits, Bonge had *no discipline* on her record at the time of her role in the December 17, 2014 collision. Opp. at 45, 47 (SOF Resp. ¶¶ 134, 146).

Furthermore, the Opposition identifies no basis on which a reasonable juror could doubt that Bonge was willing to accept guilt for her disciplinary charges, but Davis was not, further distinguishing these employees. Mov. Br. at 12-13. The best that the Opposition can do is highlight Davis' deposition testimony that, had he been presented with a written waiver agreement to admit guilt and accept a penalty for his July 12, 2018 misconduct, he "do[es]n't know" if he would have signed it. Opp. at 13. There is no dispute that Davis never asked for a written agreement to admit guilt and accept a penalty for his charges for the events of July 12, 2018, Opp. at 33 (SOF Resp. ¶ 60), and no genuine dispute that Davis was not willing to admit guilt, as Bonge did, *id.* at 33, 47 (SOF Resp. ¶¶ 61, 145), materially distinguishing them.

With respect to Bonge's discipline for events after December 2014, the Second Circuit held that cheating on examinations, which led to criminal charges, was not comparable to Davis' misconduct. *Davis*, 2024 U.S. App. LEXIS 7918, at *7.[2] Furthermore, at the time of Bonge's 2015 cheating discipline, she only had a 30-day suspension on her record – not last chance

---

[2] The Opposition does not cite any discovery material that could change the Second Circuit's holding on the lack of comparability. *See* Opp. at 12-13.

discipline, as Davis did.  Opp. at 25, 47 (SOF Resp. ¶¶ 16, 145-46).  Finally, after Bonge's February 2019 dispute with a passenger, she was terminated without receiving any pre-hearing settlement offer, and only later reinstated in a significantly lower-paying position.  Opp. at 50 (SOF Resp. ¶¶ 160, 163, 165).  Far from raising an inference of racial discrimination, the "overall pattern" of Bonge's discipline, Opp. at 13, shows, if anything, that Davis was treated *more favorably* when he was offered the opportunity to return to work as a Conductor despite his significant misconduct approximately a year and a half after returning to work on last chance discipline, *id.* at 25, 40-41 (SOF Resp. ¶¶ 16, 107-08).  The Opposition's assertion that *Norris v. Metro-North Commuter Railroad Company*, 522 F. Supp. 2d 402 (D. Conn. 2007), supports overlooking the differences between the misconduct and disciplinary histories of Davis and purported comparators such as Bonge is misguided.  Opp. at 14-15.  In fact, the *Norris* court held that the majority of the plaintiff's proposed comparators were not similarly situated based on, *inter alia*, the details of their infractions and disciplinary records, and thus could not support summary judgment.  *Norris*, 522 F. Supp. 2d at 410 & n.1.  Such is also the case with Bonge.

The Opposition likewise fails to show that Magro is a proper comparator because his conduct was not comparable to Davis'.  Mov. Br. 13-14.  Magro indisputably was not in the operating cab of the Engine when it passed a stop signal on December 17, 2014, and Davis admits that Metro-North considers an employee's physical location and whether the employee could have taken action to prevent a rule violation when issuing discipline.  Opp. at 46 (SOF Resp. ¶¶ 139-40).  The December 17 collision stemmed from a failure to obey a stop signal, of which Magro would not have been aware based on his location.  Opp. at 46-47 (SOF Resp. ¶ 142).  By contrast, despite his obstructed line of sight, due to Davis' presence in the operating cab on July 12, 2018, he knew that his train had been instructed to operate at restricted speed,

4

suggesting that it may be required to stop soon, and he could have instructed the Engineer to slow down or stop the train if he had any question about the Engineer's ability to stop within half the range of the Engineer's vision. *Id.* at 26-27 (SOF Resp. ¶¶ 25-28). Furthermore, the Opposition completely overlooks the fact that the white Assistant Conductor who was present in the operating cab on December 17 and responsible for calling out signals to the Engineer was disciplined for the event, weighing against a racially discriminatory inference. Mov. Br. at 14.

Furthermore, Metro-North cited numerous examples of non-Black Conductors who were issued disciplinary charges for failing to ensure that their trains operated at restricted speed or obeyed stop signals, showing that Magro's non-receipt of charges was not based on his race. Mov. Br. at 14. The Opposition misconstrues this evidence as showing that Metro-North "never fired an employee for the disciplinary charges brought against Mr. Davis." Opp. at 14. But this is a red herring because Davis has not introduced any evidence that these Conductors were on last chance discipline – nor do their disciplinary charges reflect the same degree and variety of misconduct which Davis was found guilty of committing. *Compare* Mustes Decl. Ex. 50 *with* Mustes Decl. Exs. 46-49, 75, 77. However, these charges do reflect that Metro-North holds Conductors responsible for speed and signal violations when they are in a position to prevent them, irrespective of their races, disproving any discriminatory inference in Davis' discipline.

### B. Davis Cannot Rely on Purported Procedural Irregularities

After failing to raise a discriminatory inference through comparator analysis, the Opposition attempts to do so through purported procedural irregularities in Davis' disciplinary process. However, it completely ignores the threshold question of whether such supposed irregularities are even relevant to a *prima facie* case, despite this Court already having held they are not. Mov. Br. at 16-17. Davis cannot avoid the fact that his own authority only considers

5

alleged irregularities after a *prima facie* case has been made, *id.* at 17, and since he has not met his *prima facie* burden, Davis' discussion of purported procedural issues should be disregarded.

Even if alleged procedural irregularities were relevant, the undisputed facts show that no such anomalies occurred. First, Davis alleges a failure to "conduct the mandatory pre-hearing conciliation meeting" purportedly required by the CBA. Opp. at 7-10, 15. However, Davis admits that the CBA only requires that Metro-North and union officials "meet for the purpose of attempting to resolve" disciplinary charges, Opp. at 31 (SOF Resp. ¶ 53), not that Metro-North offer a return-to-work agreement. Indeed, Davis has not disputed that Metro-North has not offered return-to-work agreements to at least three white employees prior to their disciplinary hearings. Paul Decl. ¶¶ 4-5; Opp. at 49-50 (SOF Resp. ¶¶ 158, 160-62). Moreover, Davis admits that prior to his disciplinary hearing, Paul spoke to his union representatives about the July 12, 2018 incident, and that Longobardi showed his union representative video of the July 12, 2018 incident. *Id.* at 30, 32 (SOF Resp. ¶¶ 44, 57). There is no genuine dispute that Metro-North and Davis' union discussed their respective positions prior to Davis' hearing, *see, e.g.*, *id.* at 32 (SOF Resp. ¶¶ 56, 58), which is all the CBA requires. Indeed, the undisputed fact that Davis' union did not allege a violation of the CBA's pre-hearing meeting requirement in their appeal of Davis' termination, *id.* at 38 (SOF Resp. ¶ 92), confirms no such violation occurred.

Davis' citation of January 2020 text messages from Dennis Richardson, one of his union representatives, Opp. at 8, does not alter this conclusion. Notably, these messages responded to Davis' request for "advice on how to respond" to Metro-North's opposition to Davis' complaint to the New York State Division of Human Rights. Reply Declaration of Jennifer A. Mustes, executed March 21, 2025, Exhibit 1. Thus, Richardson's texts are akin to attorney argument, which is afforded no weight on summary judgment. *See, e.g.*, *Leeber Realty LLC v. Trustco*

6

*Bank*, 316 F. Supp. 3d 594, 600-01 (S.D.N.Y. 2018) (disregarding attorney affirmations). Furthermore, there is no evidence that Richardson's conclusory statements regarding the purported absence of a pre-trial meeting and differential treatment of Davis were based on personal knowledge, particularly because Richardson only represented Conductors. Mustes Decl. Ex. 1 at 19. Moreover, Richardson was away during the relevant period. Mustes Decl. Ex. 23 (August 9, 2018 text message from another union representative noting Richardson's absence and stating "we will meet ***again*** [with Metro-North] next week") (emphasis added). Therefore, Richard's conclusory, advocacy statements should not be credited. *See, e.g.*, *Layne-Williams v. Radius Global Sols., LLC*, No. 22 Civ. 340, 2022 U.S. Dist. LEXIS 213864, at *6-7 (S.D.N.Y. Nov. 28, 2022) (not considering vague and conclusory statement on summary judgment).

Second, Davis claims that on July 12, 2018 Paul told Davis' union representatives that Davis would be fired. Opp. at 8-10. Even if such a statement had been made, which Paul denies,[3] the Opposition fails to connect it to Davis' race, particularly when Metro-North had identified significant misconduct by Davis within hours of the incident. Mustes Decl. Exs. 11, 13, 10 at 68-71, 89-90.[4] Moreover, Paul similarly predicted Bonge's termination after her February 2019 dispute with a passenger, Opp. at 49 (SOF Resp. ¶¶ 156-57), based on the facts then known and her disciplinary history, disproving any racial dimension to such a statement. Furthermore, after such purported statement, Metro-North offered Davis the opportunity to return to work as a Conductor, which he did not accept. Opp. at 40-41 (SOF Resp. ¶¶ 107-11).

---

[3] This claim appears to be based on Richardson's text message alleging a statement by Paul "as soon as it happened." Opp. at 8. Paul does not recall speaking with Davis' union representatives on July 12, 2018, and Paul appears to have been notified about the July 12 incident on July 13, 2018. Mustes Decl. Exs. 2 at 24, 12.

[4] The Opposition's repeated conflation of Davis' disciplinary hearing (sometimes referred to as an "investigation") with a factual investigation into the underlying events of July 12, 2018 is disingenuous. Opp. at 30 (SOF Resp. ¶ 45) (admitting pre-charge factual investigations).

7

Third, Davis complains about the timing of his disciplinary hearing. Opp. at 9-10. However, having admitted that the determination on Davis' disciplinary charges actually was issued faster than for other non-Black employees, Opp. at 38, 50, 52 (SOF Resp. ¶¶ 93, 161, 174), the Opposition is left to quibble that Davis' hearing initially was scheduled to begin on July 26, 2018, but by notice dated August 15, 2018 it was rescheduled to begin on August 29, 2018. There is no indication in the record that Davis' union objected to this timing (*id.* at 34, 38 (SOF Resp. ¶¶ 69, 92)), and it is undisputed that Paul advocated for a quick resolution of Davis' charges (*id.* at 35 (SOF Resp. ¶¶ 72-73)). Particularly because Metro-North disciplinary hearings are often rescheduled multiple times (*id.* at 37 (SOF Resp. ¶ 89)), the scheduling of Davis' disciplinary hearing cannot raise an inference of racial discrimination.

Finally, the Opposition complains that Davis' request to call other train crew members as witnesses at his disciplinary hearing was denied. Opp. at 11. However, Metro-North admittedly has denied similar requests, *id.* at 40 (SOF Resp. ¶ 103), and other testimony and argument was presented on this issue, *id.* at 39 (SOF Resp. ¶¶ 97-101). At best, the Opposition reflects Davis' disagreement about the witnesses' relevance, but it does not show that Metro-North's position was in bad faith or discriminatory, given that Davis was obliged to immediately report the collision, and at best the other witnesses could confirm that Davis overheard their report after disembarking from and moving his own train. Mustes Decl. Exs. 1 at 48, 2 at 62-64, 76-79.

### C. Davis Has Not Identified Shifting Explanations for His Termination

The Opposition also makes a cursory reference to "shifting explanations" for Davis' termination, Opp. at 16, but neither details the supposedly varying rationales, nor disputes the factual bases on which Defendants showed the consistency of the explanation, *id.* at 28-30, 39, 43 (SOF Resp. ¶¶ 37-40, 46, 97-101, 122); Mov. Br. 20-22. Although the Opposition references

8

charges issued to Davis for a brake test, which were withdrawn shortly thereafter, as "shifting explanations," Opp. at 5, in reality this shows that Metro-North only pursued factually supported charges. Moreover, because Metro-North dropped these charges, Mustes Decl. Ex. 29 at DEFS001273, and never cited them in Davis' termination notice or explanations of his termination, Mustes Decl. Exs. 50, 52, they cannot support a "shifting explanations" argument.

### D.     The Opposition Ignores Evidence Weighing Against Discrimination

Notably, the Opposition makes no attempt whatsoever to respond to the point that Engineer Craig Davis' return-to-work agreement resolving his disciplinary charges for the events of July 12, 2018 undermines any inference of racial discrimination against Davis because Craig Davis also identifies his race as Black. Mov. Br. at 22; Opp. at 26 (SOF Resp. ¶ 22).

Even more damaging to Davis' claims, the Opposition completely disregards the import of the neutral arbitrator's decision which admittedly upheld Davis' termination for the events of July 12, 2018. Opp. at 43 (SOF Resp. ¶¶ 120-21). The Opposition does not engage in any way with the Second Circuit precedent considering such a decision to be "'highly probative of the absence of discriminatory intent'" in Davis' termination. Mov. Br. at 22 (citing *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2022)). The Opposition's silence on this point speaks volumes and confirms that there is no basis on which a reasonable juror could conclude that Davis has raised the requisite inference of racial discrimination for his Title VII claim.

### III.    DAVIS HAS NOT SHOWN MALICIOUS SELECTIVE ENFORCEMENT

The Opposition establishes neither the requisite differential treatment nor malice, *see* Opp. at 6, and thus cannot show that Davis' is one of the "rare[]" successful malicious selective enforcement claims. *Bizzarro v. Miranda*, 394 F.3d 82, 86-87 (2d Cir. 2005).

9

In addition to the failed comparator analysis discussed above, the Opposition points to Craig Davis as a purported selective enforcement comparator. Opp. at 8-9. However, it is undisputed that Craig Davis was willing to and did admit guilt to his disciplinary charges in a return-to-work agreement, *id.* at 33, 34 (SOF Resp. ¶¶ 64, 67), and there is no evidence that Davis was willing to do so, *id.* at 32-33 (SOF Resp. ¶¶ 59-61). Furthermore, the attempted comparison between Craig Davis and Davis' disciplinary history, Opp. at 8-9, is unavailing; the former received last-chance discipline nearly five years earlier, and the time elapsed since such discipline affects its subsequent impact, *id.* at 25-26, 31 (SOF Resp. ¶¶ 14, 19, 52).[5]

Regarding malice, the Opposition makes a passing reference to supposed offense at a social media posting by Davis. Opp. at 2. However, Paul, Longobardi, and O'Connor admittedly were not upset by such a post, and Davis fails to identify any individual who was offended, much less one connected to his discipline. Opp. at 43-44 (SOF Resp. ¶¶ 126-30). Furthermore, Paul and Longobardi admittedly had very limited interactions with Davis, Opp. at 43 (SOF Resp. ¶¶ 123-25), and thus lacked opportunity to develop malice. Similarly, Davis' attempt to rely on alleged procedural defects in his disciplinary process to evidence malice, Opp. at 9-10, fails for multiple reasons. As shown above, such purported irregularities did not occur.[6] Furthermore, Davis "must prove that the disparate treatment was *caused by* the impermissible motivation [and] cannot merely rest on a showing of disparate treatment." *Bizzarro*, 394 F.3d at 87-88. Absent any such proof, Davis' selective enforcement claim should be dismissed.

---

[5] The Opposition's focus on the respective responsibilities of Conductors and Engineers, Opp. at 10-11, is misplaced. Admittedly, Defendants discipline Conductors for speed and signal violations they were in a position to prevent. Opp. at 48, 51-52 (SOF Resp. ¶¶ 150, 170-73).

[6] Regarding Paul's prediction that, if the hearing evidence was as expected, Davis would be terminated, the evidence disproves that such a forecast was unique to Davis, and thus not reflective of malice towards him. *See, e.g.*, Opp. at 30, 49 (SOF Resp. ¶¶ 49, 156-57, regarding similar predictions concerning Craig Davis and Bonge).

**CONCLUSION**

For the foregoing reasons and those set forth in their moving papers, Defendants respectfully request that the Court dismiss Plaintiff's claims against them with prejudice, and grant Defendants such other and further relief as the Court deems just and proper.

Dated:  New York, New York
         March 21, 2025

                                        Respectfully submitted,

                                        HALEY STEIN
                                      ACTING VICE PRESIDENT & GENERAL COUNSEL
                                      METRO-NORTH COMMUTER RAILROAD
                                      420 Lexington Ave., 11th Floor
                                      New York, New York 10170

                                  By:  s/ Jennifer A. Mustes
                                      Jennifer A. Mustes (JM2816)
                                      420 Lexington Ave., 11th Floor
                                      New York, New York 10170
                                      (212) 340-2504
                                      jmustes@mnr.org

                                 *Attorneys for defendants Metro-North Commuter*
                                 *Railroad, Andrew Paul, and John Longobardi*